IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EVANS ALLEN MEZGER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 3:08cv0163 |
| | ) |
| PRICE CPAs, PLLC, | )    Judge Thomas A. Wiseman, Jr. |
| | ) |
|     Defendant. | ) |

**MEMORANDUM ORDER**

Before the Court is defendant Price CPAs, PLLC's Motion for Reconsideration (Doc. No. 48), filed July 31, 2008, in which the defendant seeks, not a reconsideration of the judgment entered in favor of the plaintiff, but a recalculation of the damages ordered by the Court in its ruling on the plaintiff's Motion for Summary Judgment (*see* 7/21/08 Order and Final Judgment, Doc. No. 46). Plaintiff Evans Allen Mezger opposes the motion.

**I.      STANDARD OF REVIEW**

The defendant's motion purports to be filed pursuant to Local Rule 7.01(b), which provides in pertinent part that, in the event the Court issues a ruling on a motion for summary judgment prior to the expiration of a party's deadline for filing a response or reply brief in opposition to or in support of that motion, that party may file a motion to reconsider within twenty days of entry of the Court's order. Rule 7.01(b) does not apply here, because the defendant filed its response in opposition to plaintiff's motion for summary judgment on June 27, 2008; the plaintiff filed a reply brief on July 7, and this Court issued its Order ruling on the motion on July 21, two weeks later. No request was made nor permission given for the filing of a sur-reply, and the motion was fully briefed at the time the Court's ruling on the motion was entered. The Court will therefore construe the defendant's motion as one to alter or amend judgment authorized by Rule 59(e) of the Federal Rules of Civil Procedure. Defendant's motion, filed ten days after entry of judgment, is timely. Fed. R. Civ. P. 59(e).

The disposition of a Rule 59(e) motion to alter or amend a judgment is entrusted to the court's discretion. *Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005) (citing *Morales v. Am. Honda*

*Motor Co.*, 151 F.3d 500, 518 (6th Cir. 1998)). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an[ ] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (internal quotation marks and citations omitted).

Generally speaking, a district court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Intera Corp.*, 428 F.3d at 620 (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). "Such motions, however, are 'not intended as a vehicle to relitigate previously considered issues'; 'should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence'; and are not the proper vehicle to attempt to obtain a reversal of a judgment 'by offering the same arguments previously presented.' " *Nagle Indus., Inc. v. Ford Motor Co.*, 175 F.R.D. 251, 254 (E.D. Mich. 1997) (quoting *Keweenaw Bay Indian Cmty. v. United States*, 940 F. Supp. 1139, 1141 (W.D. Mich. 1996)).

## II. DISCUSSION

### A. Price's Motion to Alter or Amend Is Not Properly Supported.

Defendant Price CPAs, LLC (hereafter, "Price") does not argue that the Court committed a clear error of law; it has not presented newly discovered evidence, pointed to a change in the law, nor sought to prevent a manifest injustice. Instead, it raises a legal argument it could have but failed to raise in its opposition to Mezger's motion for summary judgment, based on evidence that has clearly been in its possession since the inception of this litigation. On that basis alone, the Court would be within its discretion to deny the motion. The Court will nonetheless consider it on the merits.

### B. Even on the Merits, Price's Motion Must Be Denied.

The damages amount awarded to plaintiff Mezger in the judgment entered on July 21, 2008 was based upon uncontroverted evidence introduced by Mezger and first provided to Mezger by Price in discovery. Price now asserts that the damages amount did not take into consideration "severance" paid to Mezger when his employment with Price ended. Price argues that the sum of the "severance" payment should be deducted from the monetary damages otherwise owed and that the liquidated damages

amount should be re-calculated based on the revised figure. (*See* Doc. No. 49 (Memorandum in Support of Motion for Reconsideration).)

In response, Mezger argues that (1) the case law interpreting the Fair Labor Standards Act and the related Portal-to-Portal Act does not support Price's claim that a set-off is required in this case; (2) in any event no reduction in the liquidated damages amount is warranted; and (3) the plain language of the parties' Employment Termination Agreement and Release shows that the payment made to Mezger pursuant to that agreement was in return for the release of certain claims against Price and not as payment towards unpaid overtime. (*See* Doc. No. 58 (Memorandum in Opposition to Defendant's Motion for Reconsideration).) The Court is persuaded by Mezger's arguments.

### *(1)  The Termination Agreement and Release*

Mezger's employment with Price terminated on August 31, 2007. The parties have never made an issue of the conditions under which Mezger's employment was terminated, but it is undisputed that upon leaving the company, Mezger executed an Employment Termination Agreement and Release ("Termination Agreement") memorializing the termination of his employment with Price. Although Price CPAs filed a motion for summary judgment premised upon the language of the Termination Agreement, and despite the fact that the document is referenced as an exhibit to the Affidavit of Thomas M. Price (Doc. No. 7), Price never actually filed a copy of the Termination Agreement with the Court, so the entire agreement has not been made part of the record. According to Price's characterization of it, which Mezger does not dispute, "Price paid Mezger consideration, as embodied in the Employment Termination and Release, in exchange for [Mezger's] executing the Employment Termination and Release." (Doc. No. 17, Pl.'s Resp. to Def.'s Statement of Undisp. Facts ¶ 6.) Further, that portion of the Termination Agreement quoted verbatim in the parties' filings states as follows:

> (A)    EMPLOYEE acknowledges full and complete satisfaction, and hereby releases and discharges the COMPANY . . . from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations[,] debts, expenses, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which EMPLOYEE now owns or holds or has at any time heretofore owned or held as against COMPANY exclusively and without limiting the generality of the obligations and causes of action, known and unknown, suspected or unsuspected by EMPLOYEE, arising out of or in any way connected, with any transactions, occurrences, acts or omissions occurring prior to the date of this Agreement and Release regarding EMPLOYEE'S employment relationship with the COMPANY and the termination of EMPLOYEE'S employment on the 31st day of August, 2007.

Case 3:08-cv-00163   Document 63   Filed 09/08/08   Page 3 of 6 PageID #: 237

> (B) It is a further condition of the consideration hereof, and it is the intention of EMPLOYEE in executing this Agreement and Release that the same shall constitute a full and effective release in accordance with its terms; and in furtherance of this intention EMPLOYEE hereby expressly and voluntarily waives any and all rights and benefits conferred upon EMPLOYEE by any Federal or Tennessee case law and/or any provision of the Federal and/or Tennessee Codes in effect on the date of execution of this Agreement and Release. This waiver includes any and all employment discrimination claims, including but not limited to claims under the Title VII of the Civil Rights Act of 1964, and the 1991 Civil Rights Act, Older Workers Benefit Protection Act, and the Age Discrimination in Employment Act. EMPLOYEE acknowledges and agrees that this waiver is an essential and material term of the Agreement and Release.
>
> (C) EMPLOYEE understands and acknowledges the significance and consequence of this Agreement and Release and of such specific waiver of any and all rights and benefits conferred upon EMPLOYEE by any Federal or Tennessee case law and/or any provision of the Federal and/or Tennessee Codes. This waiver includes any and all employment discrimination claims, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the 1991 Civil Rights Act, Older Workers Benefit Protection Act, and the Age Discrimination In Employment Act. EMPLOYEE expressly consents that this Agreement and Release shall be given full force and effect according to each and all of its express terms and provisions and unsuspected claims, demands, obligations and causes of action hereinabove specified, including those relating to unknown and unsuspected claims, demands, obligations and causes of action as specified in this Agreement and Release.

(Price Aff. ¶ 7 (quoting Termination Agreement § 2(A)–(C)).) In consideration for his signing the Agreement, Price paid Mezger $4,038.54. Price now contends that amount should be deducted from the $9,902.16 the Court found Price owes Mezger for overtime compensation, and that the liquidated damages award should be reduced by the same amount. Otherwise, according to Price, Mezger would enjoy an unwarranted "windfall" rather than mere compensation for amounts owed.

### (2) *Price Is Not Entitled to a Set-Off.*

In support of its argument, Price first cites to the legislative history of the FLSA, which documents that the Act was intended "to protect covered workers from substandard wages and oppressive working conditions." (Doc. No. 49, at 4 (quoting *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d Cir. 1992).) Price correctly points out that Mezger was not subjected to substandard wages or oppressive working conditions, but that fact does not release the Court from its obligation to apply the law as it is written. Price also references the Portal-to-Portal Act, passed in 1947, in which Congress declared its finding that the FLSA "has been interpreted judicially in disregard of long-established customs, practices and contracts between employers and employees, thereby creating wholly unexpected liabilities,

5

immense in amount and retroactive in operation[.]" *See* 29 U.S.C. § 251(a). The Portal-to-Portal Act, however, does not appear to have any direct application under the facts presented here.

Nor does the case law cited by Price support Price's position. Those cases indicate that, in some situations, the damages awarded for a violation of the FLSA should be offset by payments made by an employer to the employee, prior to judgment, that were not part of the employee's regular wages. *See, e.g.*, *Lupien v. City of Marlborough*, 387 F.3d 83, 89 (1st Cir. 2004) (holding that the district court had not erred in deducting from an FLSA damages award the money value of comp time that had been banked by employees and actually paid out); *Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 77 (1st Cir. 1998) (holding that, where the employee plaintiff had been paid his regular hourly wage rather than time-and-a-half for overtime work, the district court did not err in awarding as damages only the overtime amount not paid, plus liquidated damages in the same amount); *Martin v. Ind. Mich. Pwr. Co.*, 292 F. Supp. 2d 947, 960 (W.D. Mich. 2002) (where the employer paid the employee $10,000 twenty-one months after the plaintiff initiated litigation and virtually on the eve of a trial, and the court calculated that the defendant owed just under $10,000 in past-due overtime pay plus liquidated damages in the same amount, the court applied the amount paid by the employer to the total amount of actual and liquidated damages otherwise owed but without reducing the liquidated damages); *Barker v. Billo*, No. 82-C-1548, 1984 WL 3171 (E.D. Wis. May 1, 1984) (offsetting FLSA award by monies voluntarily paid to the plaintiff in an unsuccessful attempt to settle an FLSA claim).

The critical difference between this case and those in which employers were credited for amounts already paid to employees when it came time to calculate damages, is that the payment made to Mezger here was not for overtime pay or related in any way to an outstanding claim for overtime pay. It was not, according to the terms of the Termination Agreement, in *settlement* of any particular claim at all. Further, there is no evidence in the record before this Court that either party even considered the question of whether Mezger might have an FLSA claim against Price. Rather, as Price has expressly conceded, the payment was in consideration for Mezger's agreement to release all potential employment-related or other claims he might otherwise have had against his employer. Although this Court previously ruled that the release was not effective to waive Mezger's FLSA claims, it likely was effective in waiving any number of other claims Mezger might otherwise have brought against Price. To credit Price's payment as an

offset against the past-due overtime amounts Price owed Mezger would effectively nullify the Termination Agreement by taking away the consideration paid to Mezger in exchange for his signing it.

Under the circumstances presented, it would not be appropriate to offset the amount paid by Price pursuant to the Termination Agreement against the amount owed to Mezger under the FLSA. The payment made in connection with the Termination Agreement was not in the settlement of any claim, and the parties manifested no intention that it be credited to any past-due overtime compensation that Price might owe Mezger. Further, because there is no basis for reducing the amount of actual damages, there is likewise no basis for reducing the amount of liquidated damages, so the Court does not reach the parties' arguments on that issue.

### III.    CONCLUSION

For the reasons set forth above, Price CPAs, LLC's Motion for Reconsideration (Doc. No. 48) is hereby **DENIED**.

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge